# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00284-CV

**K. O., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 256, 733-B, HONORABLE JACK WELDON JONES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

K.O. appeals from the trial court's order terminating her parental rights to her three minor children, A.C., T.V.C., and T.M.C.[1]  On appeal, K.O. asserts that the evidence is legally and factually insufficient to support the trial court's conclusion that terminating her parental rights was in her children's best interests.  We affirm the trial court's order of termination.

## BACKGROUND

According to the progress report filed with the trial court, the Texas Department of Family and Protective Services (the Department) first became involved in this case when it received a report that K.O. was physically neglecting her children.[2]  The report indicated that K.O.'s children were not attending school even though two of them were school-aged and that the family's home

---

[1]  To protect the privacy of the parties, we refer to the minor children, parents, and other adult family members by their initials.  *See* Tex. Fam. Code § 109.002(d).

[2]  The trial court took judicial notice of the court's file, including the Department's permanency plans and progress reports.

was unsanitary, with trash and dirty dishes "everywhere." The report also stated that the utilities at K.O.'s home had recently been turned back on after having been turned off "for a while" and that the landlord attempted to evict K.O. for failure to pay rent but K.O. refused to leave. Based on this report, the Department determined that it had "reason to believe" that K.O. was physically neglecting her children.

Vicki Browder, the Department's caseworker assigned to this case, testified that the Department took possession of K.O.'s children when K.O. was incarcerated in the Bell County Jail for an unidentified offense. Browder testified that the Department created a family service plan through which K.O. could work toward regaining custody of her children. *See* Tex. Fam. Code § 263.106 (requiring trial court to incorporate Department's service plan into a court order). Browder stated that after K.O. was released from jail, she had not completed any of the requirements of her family service plan except for her initial psychological evaluation. That evaluation indicated that K.O. suffered from depression and recommended that she be seen by a psychiatrist and possibly receive medication for "some mental issues."

Browder testified that she initially had occasional contact with K.O., during which K.O. repeatedly expressed the unrealistic expectation that she would complete her family service plan and have her children returned to her within two weeks. Browder further explained that she had not heard from K.O. in the months leading up to the termination hearing, that K.O. had not had significant contact with her children since they were removed from her custody, and that she did not know where K.O. was living or how to get in contact with her.[3] K.O. was not present at the

---

[3] Browder explained that when she was able to leave a voicemail on one of K.O.'s contact numbers, the outgoing voicemail message sounded like K.O.'s voice. However, K.O. never returned Browder's message.

final hearing to terminate her parental rights, and Browder stated that she believed K.O. had constructively abandoned her children.

The Department sought to have K.O.'s children adopted by their paternal great aunt, S.B.[4] S.B. testified that she and the children were getting along "fine." She explained that she understood that adopting all three children was an "awfully large commitment" given that the youngest child was only four years old, but that she was prepared to spend the next thirteen years of her life raising them. Counsel for the Department stated that they hoped to place the children with S.B. "sooner rather than later" because the children were "very anxious to be with" S.B.

The trial court conducted a final hearing on the Department's petition to terminate K.O.'s parental rights, in which Browder and S.B. testified as outlined above. Following the hearing, the trial court found by clear and convincing evidence that K.O. had failed to comply with the requirements of her family service plan and that termination of K.O.'s parental rights was in the children's best interest. *See id.* § 161.001(1)(O), (2) (prescribing necessary findings for termination of parental rights). This appeal followed.

## DISCUSSION

In her sole issue on appeal, K.O. asserts that the evidence is legally and factually insufficient to support the termination of her parental rights. Specifically, K.O. claims that the evidence is insufficient to show that termination of her parental rights was in her children's best

---

[4] The father of two of K.O.'s children voluntarily relinquished his parental rights to his children. The father of K.O.'s other child also had his parental rights terminated. Neither of these parents appealed the trial court's orders terminating his parental rights.

interests given that the children missed K.O. and that there was no evidence termination was "necessary when the permanency plan consisted of relative placement."

To terminate the parent-child relationship, the fact-finder must find clear and convincing evidence that (1) the parent has engaged in conduct set out as statutory grounds for termination and (2) termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). K.O. does not challenge the sufficiency of the evidence to support the trial court's finding that she engaged in conduct that constitutes a statutory ground for termination. *See* Tex. Fam. Code § 161.001(1)(O). Therefore, we will consider only whether the evidence is sufficient to support the trial court's finding that termination of K.O.'s parental rights was in her children's best interests.

*Standard of review*

"The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In a termination case, we review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the trial court's determination and will uphold a finding if a reasonable factfinder could have formed a firm conviction that its finding was true. *Id.* To give appropriate deference to the trial court's conclusions, we must assume that the court resolved disputed facts in favor of its finding if it could reasonably do so. *Id.* An appellate court should disregard evidence a reasonable factfinder could have disbelieved or found incredible. *Id.*

When reviewing the factual sufficiency of the evidence in a parental termination case, we view all of the evidence in a neutral light and determine whether a reasonable factfinder could

4

form a firm belief or conviction that a given finding was true. *In re C.H.*, 89 S.W.3d at 18–19. We assume that the trial court resolved disputed facts in favor of its finding if a reasonable person could do so, and we disregard evidence that a reasonable factfinder could have disbelieved or found incredible. *J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable factfinder could not have resolved the disputed evidence in favor of its finding or if that disputed evidence is so significant that the trial court could not reasonably have formed a firm belief or conviction that its finding was true. *Id.*

*Analysis*

In a parental-rights-termination case, the best interest of the child is assessed using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). These factors include (1) the child's wishes, (2) his emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent which indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the factfinder from finding that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. While no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.).

5

In this case, there was conflicting evidence about whether K.O.'s children wished to remain with K.O. Browder testified that the children missed K.O., but counsel for the Department also stated that the children were "very anxious" to be with S.B. Furthermore, Browder stated that the children were "expressing painful thoughts and feelings relating to the neglect which led to [their] removal from [their] family." Thus, the record does not clearly demonstrate what preference, if any, the children have with respect to their placement.

However, the remaining *Holley* factors weigh strongly in favor of terminating K.O.'s parental rights. The record indicates that the children were originally taken by the Department because K.O. was incarcerated. Although past incarceration does not necessarily indicate that a parent's rights should be terminated, it can support an inference that a parent may not provide for a child's physical and emotional well being in the future. *See In re C.H.*, 89 S.W.3d at 28 (noting that past endangerment may be probative of child's best interests now and in future). Similarly, Browder's testimony that K.O. did not have realistic expectations of what she needed to do to regain custody of her children, that she did not complete most of the requirements of her family service plan, and that she had constructively abandoned her children with the Department indicate that K.O. cannot provide for the children's physical and emotional needs now or in the future, and that K.O. would not take advantage of any programs to help her in the future. Finally, Browder's testimony that she did not know where K.O. was living and that she could not contact K.O. could support an inference that K.O. was not prepared to offer a stable environment for her children. Given that K.O. did not appear at the termination hearing, the trial court did not hear any evidence concerning any potential excuses for this past behavior or any indication that K.O. had made plans for her children's future.

In her brief, K.O. asserts that her children could be placed with S.B. without terminating K.O.'s parental rights, and thus the Department failed to establish that termination was in the children's best interests. However, the evidence indicates that the Department wanted S.B. to adopt the children soon because they were anxious to live with her. Furthermore, S.B. testified that she did not intend to return the children to their parents and that she would be comfortable allowing the parents to have supervised contact only if they "got their lives together." Given that there is no indication in the record that K.O. has "gotten her life together," the trial court could have reasonably believed that termination of K.O.'s parental rights was necessary to provide the children with a permanent and stable adoptive home.

Considering this evidence in the light most favorable to the trial court's determination, we conclude that the trial court could reasonably have formed a firm belief that termination of K.O.'s parental rights was in her children's best interests. Therefore, we hold that the evidence is legally sufficient to support the trial court's finding that K.O.'s parental rights should be terminated. Similarly, in considering the evidence in a neutral light, we determine that the trial court could reasonably have formed a firm belief or conviction that termination of K.O.'s parental rights was in her children's best interests. Therefore, we hold that the evidence is also factually sufficient to support the trial court's finding that K.O.'s parental rights should be terminated. We overrule K.O.'s sole appellate issue.

## CONCLUSION

Having overruled her sole issue on appeal, we affirm the trial court's order terminating K.O.'s parental rights.

7

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   October 18, 2013